1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  CARLOS RICKY GONZALES,                     1:12-cv-00714-BAM (HC)

10                         Petitioner,        ORDER DENYING IN PART PETITION FOR
                                              WRIT OF HABEAS CORPUS, DIRECTING
11          v.                                CLERK OF COURT TO ENTER JUDGMENT
                                              IN FAVOR OF RESPONDENT ON CERTAIN
12                                            CLAIMS, AND APPOINTING COUNSEL FOR
    MARTIN D. BITTER,                         PETITIONER TO FURTHER DEVELOP AND
13                                            ADDRESS THE REMAINING CLAIMS
                           Respondent.
14  _____ /        [Doc. 1]

15

16          Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28

17  U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction

    of the United States magistrate judge.  Local Rule 305(b).

18
                                    PROCEDURAL HISTORY
19

20          Following a jury trial in the Fresno County Superior Court, Petitioner was convicted of

    first degree robbery (Cal. Penal Code[1] § 211; count one), attempted first degree robbery (§§
21
    664/211; count two), assault with a firearm (§ 245, subd. (a)(2); count three), first degree
22
    burglary (§§ 459/460, subd. (a) count four), felon in possession of a firearm (§ 12021, subd.
23
    (a)(1); count five), and participating in a criminal street gang (§ 186.22, subd. (a); count six).
24
    The jury also found the gang and firearm enhancements to be true.
25
            Petitioner was sentenced to a total term of 31 years and four months in state prison.
26

27  _____

28      [1] All further statutory references are to the California Penal Code unless otherwise indicated.

1    Petitioner filed a timely notice of appeal.  On March 1, 2011, the California Court of

2  Appeal, Fifth Appellate District affirmed the judgment.

3    On April 11, 2011, Petitioner filed a petition for review in the California Supreme Court.

4  The petition was denied on June 15, 2011.

5    Petitioner filed the instant federal petition for writ of habeas corpus on May 3, 2012.

6  Respondent filed an answer to the petition on August 14, 2012.

7                         STATEMENT OF FACTS[2]

8    On January 12, 2008, Eduardo Vidales, Rosalinda Duarte, Jose Martinez,
and Elizabeth Gonzales were all inside an apartment.  Carlos Gonzales (hereafter
9  Gonzales) entered and asked Vidales and Martinez, "where are you from? Who do
you run with?"  Both men responded that they were not gang members, after
10  which Gonzales left the apartment.  Duarte told Vidales and Martinez to hide in
the bedroom because Gonzales had a temper.

11

12    Gonzales returned with Maximino Acosta; Gonzales was carrying a
handgun and Acosta held a sawed-off shotgun.  Gonzales and Acosta went to the
13  bedroom and Gonzales placed the handgun at Martinez's head and demanded
Martinez and Vidales empty their pockets.  Before they could do so, Gonzales
14  reached into Martinez's pocket and removed an MP3 player.  Vidales had nothing
in his pockets.

15    Acosta and Gonzales left the apartment.  Duarte followed them outside
and took back Martinez's MP3 player.  After this, Acosta and Gonzales went into
16  another apartment nearby.

17    Officers responding to the scene could see through the window and
observed Acosta and Gonzales in the apartment holding weapons.  After arresting
18  Acosta and Gonzales, officers found two guns hidden in the apartment.

19    Gonzales was charged with first degree residential robbery, attempted first
degree residential robbery, assault with a firearm, first degree residential burglary,
20  possession of a firearm by a felon, and street terrorism.  It also was alleged (1) the
offenses were committed for the benefit of and in association with a criminal
21  street gang, and (2) Gonzales personally used a firearm.

22    Gonzales requested that the trial court bifurcate the gang charge and the
gang enhancement.  The trial court denied the request.
23

24    At trial, Anthony Gates testified as a gang expert.  Gates investigated and
found nine jail classifications in which Gonzales had admitted being a member of
25  the Calwa Bulldog gang.  Apart from the jail classifications, Gonzales had
admitted being a Calwa Bulldog on two other occasions.  Gonzales also had
26  numerous gang tattoos, including a tattoo of a bulldog on the back of his head.
Gonzales had been arrested in the past with known Calwa Bulldog gang members;

27  ───────────────

28    [2] The statement of facts is taken from the March 1, 2011, appellate court's decision and is presumed correct.
28 U.S.C. 2254(e)(1).

he had been contacted in the past while in the company of Calwa Bulldog gang members; and Acosta was an admitted active member of the Calwa Bulldogs. Gates opined that Gonzales was a Calwa Bulldog gang member who actively participated in the criminal street gang.

Gates testified that he was of the opinion the crimes were committed for the benefit of the Bulldog gang as well as in association with a criminal street gang. Gates stated that Gonzales would benefit from committing the crimes because gang members earn respect by committing crimes. Gates testified this was especially true in this case because Gonzales had committed the crimes with another gang member, Acosta, who could verify that Gonzales committed the crimes.

Daniel Vasquez testified for the defense. He opined that Gonzales did not intend to promote or assist a gang when he committed the offenses. Instead, Gonzales acted out of misplaced family loyalty by trying to interject himself into the social lives of two female cousins who had male visitors in their apartment.

Jury deliberations began on Friday, May 8, 2009, and continued until 4:30 p.m. when the jury was excused for the day. When the jury reconvened on May 11, Juror No. 17 called in sick and was replaced by Alternate Juror No. 2.

After deliberating, the jury informed the trial court that it was unable to reach a unanimous verdict on all counts and enhancements. Ultimately, the trial court excused Juror No. 32 when that juror reported he was unable to perform the duties of a juror because he would not judge another human being.

The trial court substituted Alternate Juror No. 1 for Juror No. 32 on May 12 and instructed the jurors to begin deliberations anew on all charges and enhancements. The jury began deliberating at 9:39 a.m. and reached its verdict at 10:00 a.m.

. . . . . . . .

(Ex. A, to Answer, at 2-4.)

DISCUSSION

I.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

1    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

2    of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

3    enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499

4    (9th Cir. 1997), cert. denied, 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th

5    Cir. 1996). The instant petition was filed after the enactment of the AEDPA and is therefore

6    governed by its provisions.

7    II.    Standard of Review

8    Where a petitioner files his federal habeas petition after the effective date of the Anti-

9    Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that

10   the state court's adjudication of his claim:

11   (1) resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the Supreme
12   Court of the United States;
     or
13   (2) resulted in a decision that was based on an unreasonable determination of the
     facts in light of the evidence presented in the State court proceeding.
14

15   28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d)

16   unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly

17   established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct.

18   770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412

19   (2000). Habeas relief is also available if the state court's decision "involved an unreasonable

20   application" of clearly established federal law, or "was based on an unreasonable determination

21   of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C.

22   § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to

23   the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant

24   state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule

25   may not be inferred from Supreme Court precedent, merely because such rule might be logical

26   given that precedent. Rather, the Supreme Court case itself must have "squarely" established that

27   specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct.

28   1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule

4

to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011).   Under § 2254(d)(1), review is limited to the record that was before the state court adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991).  However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

III.    Trial Court Decision to Dismiss Juror No. 32

A.    Dismissal of Juror No. 32

Petitioner contends the trial court erred by dismissing Juror No. 32 after finding that he could not perform his duties as a juror.

The California Court of Appeal, Fifth Appellate District denied the claim, stating:

**Factual summary**

When the jury informed the trial court it was unable to reach a unanimous verdict on specific counts, the trial court called the jury into the courtroom and asked specific questions.  The foreperson informed the trial court that the jury had reached a unanimous verdict on three counts, but was unable to reach a unanimous verdict on the other three counts or the enhancements.  The trial court then excused the jury from the courtroom, with the exception of Juror No. 32.

That morning Juror No. 32 had told the clerk he did not feel good about judging another human being.  The trial court asked Juror No. 32 whether he could

5

no longer perform the duties of a juror or whether he simply was unhappy serving on a jury.  Juror No. 32 responded that he could no longer perform the duties of a juror.  The trial court then confirmed that Juror No. 32 was not being pressured in any way to take this position.  The trial court found that Juror No. 32 could not perform his duties as a juror and excused him from the jury.

The trial court asked the People and defense counsel for argument on the proper way to proceed after Juror No. 32 had been excused.  Both parties requested that the trial court instruct the jury to begin deliberations anew on all charges.  The trial court then substituted in Alternate Juror No. 1 and instructed the jurors to set aside their past deliberations and begin anew.

**Analysis**

A juror who refuses to deliberate may be removed "on the theory that such a juror is 'unable to perform his duty' within the meaning of Penal Code section 1089." (*People v. Cleveland* (2001) 25 Cal.4th 466, 475 (*Cleveland*).)  Penal Code Section 1089 provides, in pertinent part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefore, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors."

A trial court's decision to discharge a juror and order an alternate to serve is reviewed for abuse of discretion. (*Cleveland*, *supra*, 25 Cal.4th at p. 474.)  The *Cleveland* court held that "a court may not dismiss a juror during deliberations because that juror harbors doubt about the sufficiency of the prosecution's evidence." (*Id.* at p. 483.)  A juror who refuses to deliberate, however, may be dismissed because such a juror is unable to perform his or her duty under section 1089. (*Cleveland*, at p. 475.)

Here, Juror No. 32 stated he could not "come to a judgment" in the case because he simply did not want to judge another human being.  This is a refusal to deliberate, albeit one of conscience, which constitutes inability to perform the function of a juror. (*Cleveland*, *supra*, 25 Cal.4th at p. 475.)

The trial court did not err in dismissing Juror No. 32 after deliberations had commenced.

(Ex. A at 5-6.)

B.    Substitution of Juror

Petitioner also claims the trial court erred by substituting Alternate Juror No. 1, instead of declaring a mistrial.

In the last reasoned decision, the California Court of Appeal disagreed, stating:

When a juror is dismissed after commencement of deliberations, it is appropriate to substitute another juror. (*People v. Collins* (1976) 17 Cal.3d 687, 691-692 (*Collins*).)  As the California Supreme Court stated, substitution of an

1    alternate juror "is desirable to maintain judicial efficiency." (*Id*. at p. 692.) The
     substitution of an alternate juror after deliberations have commenced is permissible
2    when the "jury has been instructed to begin deliberations anew." (*Id*. at p. 691.)

3           Here, the trial court appointed an alternate juror and instructed the jury to
     begin deliberations anew. This procedure fully comports with the requirements set
4    forth in Collins and the provisions of section 1089. The trial court did not err in
     appointing Alternate Juror No. 1 in place of Juror No. 32.
5

6    (Ex. A at 6-7.)

7           C.     Commencing Deliberations Anew

8           Petitioner also contends the trial court erred by instructing the jury to begin deliberations

9    anew after it had reached a verdict on some of the counts.

10          The California Court of Appeal found the claim to be without merit, stating:

11          The last issue [Petitioner] raises with respect to the jury is that instructing
            the jury to begin deliberations anew after it had reached a verdict on some counts
12          violated his right to due process and a jury trial, as well as the constitutional
            protections against double jeopardy. These arguments were considered, and
13          rejected, in *People v. Sanborn* (2005) 133 Cal.App.4th 1462, 1466-1468
            (*Sanborn*).) We reject them here.
14
            Both section 1089 and the holding of Collins require the trial court to
15          instruct the jury to begin deliberations anew if a juror is substituted after
            commencement of deliberations. A trial court is not required to accept partial
16          verdicts; it may properly advise the reconstituted jury to begin deliberations anew,
            even if the jury has reached verdicts on some of the charges prior to the juror
17          substitution. (*Sanborn*, *supra*, 133 Cal.App.4th at p. 1468.)

18          Also, both counsel agreed that beginning deliberations anew was the
            correct action. Thus, there was no error. (*Sanborn*, *supra*, 133 Cal.App.4th at pp.
19          1467-1468.)

20   (Ex. A at 7.)

21          The Fourteenth Amendment guarantees a right to a trial by jury in all criminal cases that

22   would come within the Sixth Amendment's guarantees if tried in a federal court. Duncan v.

23   Louisiana, 391 U.S. 145, 149 (9th Cir. 1968). A defendant's Sixth Amendment right to a fair trial

24   is violated when the "essential feature" of the jury is not preserved. Williams v. Florida, 399 U.S.

25   78, 100 (1970). An impartial jury consists of jurors who will conscientiously apply the law and

26   determine the facts. Lockhart v. McCree, 476 U.S. 162, 178 (1986). An impartial juror must lay

27   aside his/her own opinion and render a verdict based only on the evidence presented in court.

28   Irvin v. Dowd, 366 U.S. 717, 721-722 (1961). The determination of whether a juror is impartial is

                                                 7

1   a question of federal law.  Id. at 722.

2          California Penal Code section 1089 governs the discharge and substitution of jurors in

3   California criminal trials.  Cal. Penal Code § 1089.[3]  The Ninth Circuit has upheld the

4   constitutionality of Section 1089 by determining it "preserved the 'essential feature' of the jury

5   required by the Sixth and Fourteenth Amendments."  Miller v. Stagner, 757 F.2d 988, 995 & n.3

6   (9th Cir.), amended, 768 F.2d 1090 (9th Cir. 1985).  Thus, on habeas review, this Court must

7   determine whether good cause supported the dismissal of the juror, and whether, in cases in which

8   the trial court knows a juror is a lone holdout for acquittal, the dismissal was motivated by the

9   jurors views of the merits of the State's case.  See Perez v. Marshall, 119 F.3d 1422, 1426-1427

10  (9th Cir. 1997).

11         A state court's factual determination that good cause supported removing a particular juror

12  is presumed correct, and must be upheld unless the finding was based on an "unreasonable

13  determination of the facts in light of the evidence presented in the State court proceeding."  28

14  U.S.C. § 2254(d)(2), (e)(1); Perez v. Marshall, 119 F.3d at 1426 (state court's findings on juror

15  fitness are entitled to special deference and should only be reversed if there is "manifest error" in

16  the findings).  When a state court of appeal cites only state law authorities in rejecting a

17  defendant's claim that a juror's removal violated his Sixth Amendment rights, federal habeas

18  review is de novo.  Williams v. Cavazos, 646 F.3d 626, 636-641 (9th Cir. 2011).

19         Based on a review of the record, the Court finds that further development of these claims

20  is necessary, including potential discovery, expansion of the record, and/or an evidentiary hearing

21

22

23

24         [3] California Penal Code Section 1089 provides in pertinent part:

25         If at any time, whether before or after the final submission of the case to the jury, a juror dies or
26         becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty,
           or if a juror requests a discharge and good cause appears therefore, the court may order the juror to
27         be discharged and draw the name of an alternate, who shall then take a place in the jury box, and
           be subject to the same rules and regulations as though the alternate juror had been selected as one
28         of the original jurors.

8

before the Court can address the merits.  Therefore, the Court will appoint counsel[4] for Petitioner to further address these claims on the merits.

IV.    <u>Bifurcation</u>

Petitioner contends the trial court erred by refusing to bifurcate the trial of the gang enhancement from the substantive offenses.  Petitioner does not however challenge the severance of the gang offense.

As previously stated, Petitioner was charged with first degree robbery, attempted first degree robbery, assault with a firearm, first degree burglary, being a felon in possession of a firearm, and participation in a criminal street gang.  (CT 369-373.)  Gang enhancements were alleged as to the first five charges.  Petitioner sought to bifurcate the gang enhancements and the gang charge.  (CT 283.)  The trial court denied the request.  (<u>Id.</u>)  The jury found the gang allegations to be true.  (CT 460-461, 463-468.)

The California Court of Appeal denied the claim and held as follows:

> The denial of a motion to bifurcate the trial of a gang enhancement is reviewed for abuse of discretion.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048 (*Hernandez*).)  Even if some of the evidence offered to prove a gang enhancement would be inadmissible at a trial of the substantive offense, a trial court still may deny bifurcation.  (*Id.* at p. 1050.)

**Analysis**

> Gang evidence may be relevant to establish "identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.]'" (*Hernandez*, *supra*, 33 Cal.4th at p. 1049.)  Under these circumstances, a gang enhancement is inextricably intertwined with the substantive offense and bifurcation would not be necessary.  (*Id.* at pp. 1048-1050.)  Here, gang evidence was inextricably intertwined with the substantive offenses.

> Gang evidence clearly was relevant to establish motive, intent, and identity. Gonzales questioned the victims on whether they claimed any affiliation and acted to rob the victim after receiving a response indicating the victims were not members of the Bulldog gang. The testimony at the preliminary hearing was that Gonzales and Acosta committed the offenses to enhance their standing as gang members and to benefit the Bulldog gang.

---

[4] The Sixth Amendment's right to counsel does not apply in habeas corpus actions.  <u>See Knaubert v. Goldsmith</u>, 791 F.2d 722, 728 (9th Cir. 1986).  Under 18 U.S.C. § 3006A(a)(2)(B), however, a district court is authorized to appoint counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require" and such person is financially unable to obtain representation.

Gonzales also had numerous visible gang tattoos, including a tattoo of a bulldog on the back of his head.  Acosta too had visible gang tattoos and indicia, including a tattoo of a dog collar and a bulldog.  Gonzales committed the crime in conjunction with another person with identifiable Bulldog gang tattoos, a method of operating that is consistent with gang membership.

Moreover, since Gonzales (1) never moved to sever the trial of the gang offense from the other substantive offenses, and (2) has not raised any issue on appeal that failure to sever the gang offense based on his bifurcation motion was error, the gang evidence was admissible as to the gang offense and bifurcation, therefore, would have served no purpose.

Here, the trial court noted that the question put to the victims by Gonzales "arguably" was "part of the motive" for committing the offenses.  It was Gonzales himself who injected his gang status into the substantive offenses by identifying himself as a gang member, asking the victims if they claimed any affiliation, and then demanding money or goods when the victims acknowledged they were not Bulldog gang members.

Under these facts, we conclude the trial court did not abuse its discretion in refusing to bifurcate trial of the gang enhancement from trial of the charged offenses.  (*Hernandez*, *supra*, 33 Cal.4th at p. 1050.)

(Ex. A at 7-9.)

The Supreme Court has determined that a criminal defendant does not have a constitutional right to bifurcation.  See <u>Spencer v. Texas</u>, 385 U.S. 554, 568 (1967) ("Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure.")  Therefore, this Court's review is limited to a determination of whether Petitioner's due process rights were violated by the trial court's failure to bifurcate the trials.  <u>Featherstone v. Estelle</u>, 948 F.2d 1497, 1503 (9th Cir. 1991) ("The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate." (internal quotation marks and citation omitted)).

Petitioner bears the burden of demonstrating that the trial court's decision not to bifurcate rendered his trial fundamentally unfair.  <u>Davis v. Woodford</u>, 384 F.3d 628, 638 (9th Cir. 2003).  "In evaluating prejudice, the [federal habeas court] focuses particularly on cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another."  <u>Id.</u>  "The risk of undue prejudice is particularly great whenever joinder of counts allows evidence of other crimes to be introduced in a trial where the

1  evidence would otherwise be inadmissible.  Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir.

2  2000, as amended Feb. 21, 2001).

3         In this case, Petitioner was tied to the Bulldog street gang.  Petitioner was charged with

4  participating in a criminal street gang (street terrorism) under Section 186.22, subdivision (a).

5  Both the street terrorism and gang enhancement allegations required evidence that Petitioner

6  promoted, furthered, or assisted in criminal conduct by gang members.   Because Petitioner did

7  not seek to sever the street terrorism charge from any of the other charges (RT 105-107),

8  bifurcation under these circumstances would not have been proper.

9         Further, the gang evidence was admissible to show motive of the underlying offenses.  See

10 Sandoval v. Calderon, 241 F.3d at 772 ("cross-admissibility dispels the prejudicial impact of

11 joining all counts in the same trial").  Petitioner committed the crime with accomplice, Acosta,

12 who both had tattoos representing the Bulldog gang.  Just prior to the robbery, Petitioner asked the

13 victim of his gang affiliation.  There was testimony at the preliminary hearing that the robberies

14 tended to support Bulldog street gang's status which established a motive for the robbery and

15 possible identity.  Gang expert Gates testified at the preliminary hearing that:

16        it benefitted them individually ... because now each one can testify to each other's
          willingness to commit these types of acts.  There was [sic] weapons involved, if
17        the set of facts in the report are true, which I think you're asking me to accept.  So
          each one's own status, willingness to commit these types of crimes, willingness to
18        help each other work in association with is bolstered.  Neither one said no, I'm not
          going to do that.  Both of them worked together, and therefore, their reputation for
19        not being a punk but rather being somebody who's down for doing these types of
          crimes is bolstered.

20

21 (CT 191.)

22 The evidence establishing the gang and robbery counts was cross-admissible and any prejudice

23 was therefore dispelled.  Moreover, even if the trial court erred by failing to bifurcate the charges

24 there was overwhelming evidence in support of Petitioner's guilt.  Petitioner and fellow gang-

25 member, Acosta, entered Martinez's apartment, and Petitioner told him to empty his pockets as he

26 placed a gun into the back of Martinez's head and removed an MP3 player from his pocket.

27 Elizabeth Gonzales told a detective that she saw Petitioner, Acosta, Martinez, and Vidales in one

28 of the apartment's bedrooms.  (RT 496.)  She saw that Petitioner and Acosta were armed and were

telling Martinez and Vidales to empty their pockets.  (RT 498.)  Duarte testified that she was also present in the apartment during the robbery and saw Petitioner and Acosta carrying guns.  (RT 458-459.)  In light of the eyewitness testimony, there was more than sufficient evidence for the jury to find beyond a reasonable doubt that Petitioner was guilty of robbery and attempted robbery, assault with a firearm, burglary, and unlawful possession of a firearm irrespective of the admission of the gang evidence.  Accordingly, any error was harmless in this instance.

Furthermore, the jury was instructed that it could consider the gang related activity "only for the limited purpose of deciding whether the defendant acted with the intent, purpose, and knowledge that are required to prove gang-related crime and allegation charged."  (CT 407.)  A jury is presumed to follow the instructions it is given; in this case to consider the evidence only for the limited purpose.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  Petitioner has provided no evidence to the contrary.

Under these circumstances, the trial court's failure to bifurcate the gang enhancement allegation did not render Petitioner's trial fundamentally unfair because the gang evidence was cross-admissible.

V.    Insufficient Evidence

Petitioner contends there was insufficient evidence to support the true finding on the gang enhancement.  He claims there was not sufficient evidence to establish that the crimes were committed for the "benefit of, at the direction of, or in association with a criminal street gang," or that he harbored the requisite specific intent to promote the criminal street gang.

The California Court of Appeal found there was sufficient evidence to support the gang enhancement stating:

> In reviewing the sufficiency of the evidence we view the evidence in the light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *People v. Augborne* (2002) 104 Cal.App.4th 362, 371 [standard of review of sufficiency of the evidence applies to criminal street gang enhancement].) We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.) We have no power on appeal to reweigh the evidence or judge the credibility of witnesses. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) We must affirm if we determine that any rational trier of fact could find the elements of the crime or enhancement beyond a reasonable doubt. (*Johnson*, at p. 578.)

Analysis

"[A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang member, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished [with a sentence enhancement]." (§ 186.22, subd. (b)(1).) The criminal street gang enhancement of section 186.22, subdivision (b)(1) applies if the crime for which the defendant was convicted was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."

The first prong of Gonzales's attack on the gang enhancement is that the evidence failed to establish the crimes were committed in association with any criminal street gang. He contends that without the throwing of gang signs, or leaving gang graffiti at the scene, there was no indication the crimes were for the benefit of a criminal street gang. Gonzales also states the crimes were "not committed in a place that could be seen or heard by any neighbors or members of the community that might have been intimidated or made to understand that the crime was gang related." If we were to accept this premise, it would follow that (1) no crime committed inside a building or dwelling could ever be committed for the benefit of a gang because the crime would not be committed in a location where it was readily observed, and (2) any crime without gang graffiti or the throwing of gang signs could not be gang related. This is not the standard for determining whether a crime falls within section 186.22, subdivision (b).

The element of the enhancement that addresses commission of the crime for the benefit of or in association with a criminal street gang is satisfied if the evidence establishes that the defendant intended to commit the crime in association with other gang members. (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 (*Morales*) [jury may "reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members"].) "[O]ne gang member would choose to commit a crime in association with other gang members because he could count on their loyalty." (*Id.* at p. 1197.)

The California Supreme Court recently issued *People v. Albillar* (2010) 51 Cal.4th 47 (*Albillar*), addressing the section 186.22, subdivision (b) gang enhancement. In *Albillar*, the defendants sexually assaulted the victim inside an apartment; the three gang members who committed the crimes were related to each other. (*Albillar*, at p. 51.) There was no gang graffiti left in the apartment and no throwing of gang signs. (*Id*. at pp. 51-53.)

The California Supreme Court concluded the evidence was sufficient to support a finding that the crimes were committed in association with the gang: "Defendants not only actively assisted each other in committing these crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together." (*Albillar*, *supra*, 51 Cal.4th at pp. 61-62.) By committing crimes together, gang members increase their status among those participating in the crimes and among the entire gang. (*Id*. at p. 61.)

Here, Gonzales clearly intended to commit the crimes with a fellow gang

member.  Gonzales, after initially inquiring about the victims' gang status left the apartment and returned with his fellow Bulldog gang member, Acosta, in order to commit the criminal offenses.  Consequently, the evidence establishes Gonzales committed the crimes in association with a criminal street gang.  (*Albillar*, *supra*, 51 Cal.4th at pp. 61-62; *Morales*, *supra*, 112 Cal.App.4th at pp. 1197-1198.)

The second prong of Gonzales attack on the gang enhancement is that the evidence failed to establish he had the requisite intent to promote or assist in criminal conduct by the gang.  Gonzales contends his mere membership in and connection to the Bulldog criminal street gang was insufficient to support a true finding that he had the specific intent to promote, further, or assist in any criminal conduct by gang members.

"[S]pecific intent to benefit the gang is not required.  What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members....'" (*Morales*, *supra*, 112 Cal.App.4th at p. 1198.)  Gonzales entered the apartment and asked the victims "where are you from? Who do you run with?"-a question typically used to determine gang affiliation.  (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1208-1208 (*Zepeda*).)  Gonzales then left and returned with another known gang member, Acosta; both Acosta and Gonzales were carrying guns; both men then proceeded to rob or attempt to rob the victims.

The specific intent to promote, further, or assist in any criminal conduct by gang members is satisfied when there is an intent to assist in committing the current offenses, not just other criminal conduct by gang members.  (*Albillar*, *supra*, 51 Cal.4th at pp. 64-65.)  When it is demonstrated that a gang member intended to commit the current offenses, intended to commit them in association with another person, and knew the other person to be a member of his gang, then the specific intent requirement of section 186.22, subdivision (b)(1) has been met.  (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 322.)  As the court stated in *Albillar*, the specific intent requirement "is unambiguous and applies to any criminal conduct, without a requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced." (*Albillar*, *supra*, 51 Cal.4th at p. 66.)

Gonzales's case is similar to the *Zepeda* case where the defendant asked the victim "where you from" before shooting the victim.  (*Zepeda*, *supra*, 87 Cal.App.4th at p. 1190.)  Expert testimony then established that the question typically was used to establish gang affiliation; attacking the victim would enhance the reputation of the defendant's gang and provided a motive for the crime.  (*Id*. at pp. 1207-1208.)

Conclusion

The substantial evidence standard of review applies to the section 176.22 enhancement.  (*People v. Maury* (2003) 30 Cal.4th 342, 396.)  After inquiring of the victims if they had any gang affiliation, Gonzales left the apartment and then returned with a fellow Bulldog gang member, Acosta, and guns.  The two men then proceeded in concert to rob or attempt to rob Martinez and Vidales.  These facts provide substantial evidence from which a reasonable jury could render a true finding on the section 186.22, subdivision (b)(1) gang enhancement.  (*Albillar*, *supra*, 51 Cal.4th at p. 68.)

(Ex. A at 9-13.)

14

The law on insufficiency of the evidence claims is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.  <u>Id</u>. at 324, n. 16.  On federal habeas review, AEDPA requires an additional layer of deference to the state decision.  <u>Juan H. V. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  This Court must determine whether the state decision was an unreasonable application of the <u>Jackson</u> standard.

In this case, there was sufficient evidence from which a rational trier of fact could have found Petitioner guilty of active participation in a criminal street gang.  The jury was presented with not only Anthony Gates expert's opinion that Petitioner was an active gang member, but the basis for his opinion which included evidence of gang signs, gang graffiti, association with other known gang members, questioning of the victim's gang affiliation, Petitioner's gang-related tattoos, and Petitioner's jail classification and admission that he was a member of the Calwa Bulldog gang.  (RT 649-675.)  Therefore, the state court's rejection of this claim was neither contrary to or an unreasonable application of clearly established Federal law, nor an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

## VI.   Consecutive Sentences

Petitioner contends the trial court abused its discretion by imposing consecutive terms on counts 1 and 2, robbery and attempted robbery, instead of concurrent terms.  His argument is based on his claim that he can only be culpable of a single act of violence against Martinez and Acosta committed an act of violence against Vidales.

The appellate court upheld the sentence and denied the claim, stating:

> The jury convicted Gonzales of both robbery of Martinez and attempted robbery of Vidales.  No challenge to the sufficiency of the evidence to support these convictions has been made.  Section 669 grants broad discretion to a trial court to impose consecutive sentences when a defendant, like Gonzales, has been convicted of two or more crimes.  (*People v. Shaw* (2004) 122 Cal.App.4th 453, 458.)  Under California Rules of Court, rule 4.425(a)(2), "the court may impose consecutive sentences for separate acts of violence against multiple victims."

15

1    (*Shaw*, at p. 458.)

2            The jury found Gonzales committed multiple acts of violence against two
     victims: Martinez and Vidales.  He may have directed his weapon at only one
3    victim, but he also aided Acosta in attempting to rob the other victim.  The burden
     is on Gonzales, as the party attacking the sentence, to show that the sentencing
4    decision was irrational or arbitrary.  (*People v. Superior Court* (*Alvarez*) (1997) 14
     Cal.4th 968, 977-978 (*Alvarez*).)  This he has not done.  "In the absence of such a
5    showing, the trial court is presumed to have acted to achieve legitimate sentencing
     objectives, and its discretionary determination to impose a particular sentence will
6    not be set aside on review. [Citation.]" (*Ibid*.)

7            To the extent Gonzales is arguing that he should have been sentenced to
     concurrent terms because Acosta was sentenced to concurrent terms, a trial court's
8    sentencing decision will not be reversed merely because reasonable people might
     disagree. "'"An appellate tribunal is neither authorized nor warranted in
9    substituting its judgment for the judgment of the trial judge." [Citations.]'
     [Citation.]" (*Alvarez*, *supra*, 14 Cal.4th at p. 978.)

10

11   (Ex. A at 13-14.)

12          Claims of state sentencing error are not generally cognizable in a federal habeas corpus

13   proceeding.  Habeas corpus relief is not available for alleged errors in the interpretation or

14   application of state sentencing laws by either the state trial court or appellate court.  <u>Souch v.</u>

15   <u>Schaivo</u>, 289 F.3d 616, 636 (9th Cir. 2002) ("[N]either an alleged abuse of discretion by the trial

16   court in choosing consecutive sentences, nor the trial court's alleged failure to list reasons for

17   imposing consecutive sentences, can form the basis for federal habeas relief.").  Federal courts

18   must defer to the state courts' interpretation of state sentencing laws.  <u>Estelle v. McGuire</u>, 502

19   U.S. 62, 67-68 (1991); <u>Bueno v. Hallahan</u>, 988 F.2d 86, 88 (9th Cir. 1993).  Absent a showing of

20   fundamental unfairness, a state court's application or misapplication of its own sentencing laws

21   does not generally justify federal habeas relief.  <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir.

22   1994).

23          To the extent the claim is construed as a constitutional violation resulting in fundamental

24   unfairness, the California Court of Appeal specifically found that under California law the trial

25   court had discretion to impose consecutive sentences.  Because California has assigned such

26   discretion to its sentencing courts, the imposition of consecutive sentences for multiple

27   convictions does not violate Petitioner's rights or warrant federal habeas corpus relief.  <u>Oregon v.</u>

28   <u>Ice</u>, 555 U.S. 160, 171-172 (2009) (state may assign judges decision whether to impose

consecutive sentences).

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.    The claims presented in Sections IV, V, and VI, are DENIED on the merits;

2.    Pursuant to 18 U.S.C. § 3006(A), the Federal Defender is APPOINTED and shall provide or find legal representation for Petitioner;

3.    The Clerk of Court shall serve a copy of this Order on David M. Porter, Assistant Federal Defender; and

4.    The Office of the Federal Defender shall file a Notice of Appearance within thirty days from the date of service of this order, at which time the Court will issue a scheduling order for further briefing.

IT IS SO ORDERED.

Dated:   **September 27, 2012**          **/s/ Barbara A. McAuliffe**
                                          UNITED STATES MAGISTRATE JUDGE