**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLOS RICKY GONZALES,<br><br>    Petitioner,<br><br>    v.<br><br>MARTIN D. BITTER ,<br><br>    Respondent. | Case No.: 1:12-cv-00714-BAM (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS IN FULL, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>(ECF No. 1) |

Petitioner is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States magistrate judge. Local Rule 305(b).

**I.**

**PROCEDURAL BACKGROUND**

Petitioner filed the instant petition for writ of habeas corpus on May 3, 2012. Respondent filed an answer to the petition on August 14, 2012. Petitioner did not file a traverse.

On September 28, 2012, the undersigned issued an order denying in part the petition for writ of habeas corpus, and appointed the office of the Federal Defender to provide representation to Petitioner to address Petitioner's challenges to the dismissal of Juror No. 32.

On March 22, 2013, counsel Carolyn Phillips filed a brief addressing the claims relating to the dismissal of Juror No. 32. Respondent filed a reply on April 22, 2013.

## II.

## DISCUSSION

A. **Dismissal of Juror No. 32 During Deliberations**

In the first three claims of the petition, Petitioner contends the trial court committed prejudicial error when it dismissed Juror No. 32 during deliberations, substituted in an alternate juror, and instructed the jury to begin deliberations anew.

1. Factual/Procedural Background

In the midst of deliberations, the jury informed the trial court that it had reached unanimous verdicts as to some counts and was unable to reach unanimous verdicts as to other counts, and requested guidance as to further deliberations. In response, the following colloquy took place:

> First of all, ****6, as the foreperson here I'm going to address some questions to you here. All right? And I want you to be very careful and specific in how you respond to these questions like [sic] I direct you. First of all, I want you all to be aware of the communications that have been made on your behalf so we're kind of like all on the same page here. Okay? Then I'm going to ask you some specific questions of you, first of all, ****6. Then I'm probably going to ask each of you individually some questions. And then we'll decide what we're going to do. Okay?
>
> So first, the first communication we had from you relating to the subject matter that we're about to discuss asks the following: We the jury request the following:
>
> Clarification on what we should do if we're unable to reach a unanimous decision on specific counts. That's the way it was put. All right? And because of some issues that are not important for you, necessarily, to know at his point, I did ask that you report to us what counts the jury was unanimous on. Actually, I didn't need to know anything more than the count numbers. You told me more than that. I haven't shared that with counsel. That's not particularly important here. But what you did tell me you are unanimous on Counts Two, Three and Six of which obviously means you are not unanimous on the others, at least that's how I interpreted it, and what counsel and I interpreted as.
>
> Again, for a reason that's not particularly important for you, I did ask a follow-up question to that. And that is: Is the jury unanimous as to the charge on Count One but unable to reach a unanimous decision as to the lessers on that count, or is the jury simply not unanimous on Count One at all, either the charge or any lesser? And as I understood it your answer to that was the latter. Jury is not unanimous on Count One at all.
>
> So I'll start with what I just said here, ****6. On behalf of the jury, is that true, the jury not unanimous on Count One at all?

JUROR ****6 IN SEAT NUMBER SIX: Correct.

THE COURT: Still the case. Okay. And – but the jury is unanimous on Counts Two, Three and Six; is that right?

JUROR ****6: IN SEAT NUMBER SIX: Yes.

THE COURT: Now, in follow-up, kind of on your own and not in response to my question, you said the following: Directions on how to proceed with the enhancement of Count Two, specifically the use of a firearm if we cannot agree on an enhancement.

I take it from that that although the jury is unanimous on Counts Two, Three and Six, it may not necessarily be unanimous on all the enhancements that apply to those counts: is that true --

JUROR ****6 IN SEAT NUMBER SIX: Yes.

THE COURT: - - madam foreperson?  Okay. Now, so without being too complicated here, I'm going to ask you to do something here for me. And I want you to be very specific. I'm going to ask, basically, when you say the jury is not unanimous, how the jury is divided, but I don't want you to tell me like well, six people think the defendant is guilty and six think he's not. Six people think the enhancement is right and/or true and six not. Meaning, don't tell me how - - what direction you are in any of this. What I really want to hear is numbers. And so I don't know if the jury is all the same on all of these things or not. And I don't necessarily want to go through each of these counts. But I want to start with, let's just say, on the issue of guilt on the three counts on which the jury is not unanimous. Can you tell me how the jury is divided? Like seven to five, 11 to one, ten or two? Can you answer that for me?

JUROR ****6 IN SEAT NUMBER SIX: Yes. 11 to one.

THE COURT: Would that be true on all the counts jury is not unanimous. First of all, let's start with Count One. Is the jury 11 to 1 on that count?

JUROR ****6 IN SEAT NUMBER SIX: I don't have those notes with me. I have them back in the deliberating room.

THE COURT: Okay. I'm going to ask you to go back and get your notes. . . .

Let's just start with Count One on the charge alone. Can you tell me what the breakdown is [numerically] on that?

JUROR ****6 IN SEAT NUMBER SIX. 10 to 2.

THE COURT: Okay. So Count Four, which I think is the charge of burglary.

3

1   JUROR ****6 IN SEAT NUMBER SIX:  11 to one.

2   THE COURT:  And Count Five, which I think is the charge of possession of a
3   firearm.

4   JUROR NUMBER ****6 IN SEAT NUMBER SIX:  11 to one.

5   THE COURT:  Okay.  And the enhancement on Count Two, can you tell me
6   what the breakdown is on that that you reported in your note to the court?

7   JUROR NUMBER ****6 IN SEAT NUMBER SIX:  I didn't make any notes
8   on that.

9   THE COURT.  Not sure.

10  JUROR NUMBER ****6 IN SEAT NUMBER SIX:  It was either 11 to one or
    ten to two.
11

12  THE COURT:  Okay.  I think that answers enough for me for all of you to know
    what's going on here.  I think we have a fairly good idea.  I'm just going to ask a
13  question of each of you individually.  I really think the truth is, because we don't want
    to invade the jury's thought processes in this questioning process,  I really just need a
14  yes or no answer from you.  You know, we know it's almost 4:00 here and all of that,
    you know, and what you've been through today with kind of restarting your
15  deliberations.

16
    I'm just going to ask each of individually whether you think if you are given
17  some more time to deliberate, which as a practical matter means tomorrow, and some
    opportunity for further read back from the court reporter here or questions that the court
18  may be able to answer, whether you think there's any reasonable likelihood that this
    jury could arrive at a unanimous decision on any of those remaining counts or
19  enhancements, or any other enhancements for that matter, that you might not have
    arrived at a decision – unanimous decision?  I'm going to ask each of you.
20

21  ****28, yes or no?

22  JUROR ****28 IN SEAT NUMBER ONE:  No.

23  THE COURT:  ****2, yes or no?
24
    JUROR ****2 IN SEAT NUMBER TWO:  No.
25
    THE COURT:  … Juror Number Three?
26
27  JUROR NUMBER ****33 IN SEAT NUMBER THREE:  No.

28  THE COURT:  Juror Number Four?

4

JUROR NUMBER ****4 IN SEAT NUMBER FOUR: No.

THE COURT: Juror Number Five?

JUROR NUMBER ****5 IN SEAT NUMBER FIVE: No.

THE COURT: Juror Number Six?

JUROR NUMBER ****6 IN SEAT NUMBER SIX: No.

THE COURT: Juror Number Seven?

JUROR NUMBER ****32 IN SEAT NUMBER SEVEN: No.

THE COURT: Juror Number Eight?

JUROR NUMBER ****36 IN SEAT NUMBER EIGHT: No.

THE COURT: Juror Number Nine?

JUROR NUMBER ****25 IN SEAT NUMBER NINE: No.

THE COURT: Juror Number Ten?

JUROR NUMBER ****10 IN SEAT NUMBER TEN: No.

THE COURT: Juror Number Eleven?

JUROR NUMBER ****11 IN SEAT NUMBER ELEVEN: No.

THE COURT: Juror Number Twelve?

JUROR NUMBER ****18 IN SEAT NUMBER TWELVE: No.

THE COURT: That we're unanimous on. Okay. Counsel, I want to see the two of you in the hallway for one second.

THE COURT: You know, ladies and gentlemen, I'm – you know, I'm not going to allow you to deliberate right now. I do want to excuse you from the courtroom. ****32, I want you to stay with us. Okay? So if I could have you all leave the courtroom. I'll be back to you and answer what we're going to do here in the next 15 minutes or so. Okay?

THE COURT: Okay. The record should reflect that all the jurors save and except ****32 have left the courtroom.

****32, I don't want you to misunderstand this inquiry.  I don't want to put any pressure on you.  I certainly don't want you to tell us in any context at all how you are voting on this jury at all.  Okay?  I want you to understand that right now.

And we've heard ten to two, 11 to one.  I don't want you to tell us if you are one of the 11 or you are the 1.  That's not what my questioning is about.

This morning when you got to court and you reported as a juror you said something to the clerk about just not feeling good about judging another human being or something like that.   And kind of being sorry for being here or something to that effect.  And I don't want to mischaracterize what you had to say when you said that.  I didn't interpret it as being particularly important.  I just simply shared it with counsel.  That's all.  Only because I thought it's important anything that's communicated to the court be communicated with counsel.  And they were satisfied to just let it go.  Although in fairness, the District Attorney thought he might want to ask you some more about whether you could do this job or whether you changed your mind about it.

I had – I'd made it pretty clear during jury selection last week that, you know, you don't sit in judgment – moral judgment of anybody as a juror.  You just make a decision about facts, if you can.  And so I guess I just want to ask, sir, you know, in light of what you said this morning, did you change your mind about whether you can do this job or did you – you known, you feel like you just weren't happy about being here but you could do the job?

JUROR NUMBER ****32 IN SEAT NUMBER SEVEN:  No, I believed I changed my mind.  After seeing all the evidence and hearing witnesses it was just, I felt, something I could not do.  I could not come to a judgment.

THE COURT:  Okay.  And that's how you felt.  And do you still feel that way now, sir?

JUROR NUMBER ****32 IN SEAT NUMBER SEVEN:  Yes.

THE COURT:  I don't want to put words in your mouth.  What I'm hearing from you is it wasn't just a matter of not feeling like you wanted to continue to participate, but you are just saying you couldn't follow the law.  You just can't make a judgment in this case because of not wanting to judge another person?

JUROR NUMBER ****32 IN SEAT NUMBER SEVEN:  Yes.

THE COURT:  I'm going to allow you to inquire, either counsel here, on this matter.

. . .

THE COURT:  But I guess I just want to – I'm really concerned that we're putting some kind of pressure on you, sir.  You know, you said what you said to

Horalea this morning. And I didn't really interpret that as meaning that you couldn't do the job anymore; that you really changed your know, have a different point of view, but – feelings, but not changing your ability to do the job. You know what I'm saying?

JUROR NUMBER ****32 IN SEAT NUMBER SEVEN: Yes.

THE COURT: So I kind of resisted the idea that we'd ask you all of these questions earlier, you know. But I guess before you leave here I want to make sure that you are just telling me this is not because of what's going on with this jury. But even this morning you just felt like, had you had the opportunity, you would have told me judge, I couldn't do this job anymore?

JUROR NUMBER ****32 IN SEAT NUMBER SEVEN: Yes.

THE COURT: That is the plain truth?

JUROR NUMBER ****32 IN SEAT NUMBER SEVEN: Yes.

THE COURT: Even before all of this got started this morning, you know, that if you articulated it that way, that's what you really wanted to stay to Horalea this morning, I can't do this job anymore?

JUROR NUMBER ****32 IN SEAT NUMBER SEVEN: Yes.

THE COURT: Yes?

JUROR NUMBER ****32 IN SEAT NUMBER SEVEN: Yes.

THE COURT: Thank you very much. . . .

(RT 859-869.)

2. <u>Last Reasoned Decision of California Court of Appeal, Fifth Appellate District</u>

The California Court of Appeal found Petitioner's challenges to be without merit, stating in relevant part the following:

> A juror who refuses to deliberate may be removed "on the theory that such a juror is 'unable to perform his duty' within the meaning of Penal Code section 1089." (<u>People v. Cleveland</u> (2001) 25 Cal.4th 466, 475 (<u>Cleveland</u>).) Penal Code Section 1089 provides, in pertinent part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefore, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury

box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors."

A trial court's decision to discharge a juror and order an alternate to serve is reviewed for abuse of discretion. (Cleveland, supra, 25 Cal.4th at p. 474.) The Cleveland court held that "a court may not dismiss a juror during deliberations because that juror harbors doubt about the sufficiency of the prosecution's evidence." (Id. at p. 483.) A juror who refuses to deliberate, however, may be dismissed because such a juror is unable to perform his or her duty under section 1089. (Cleveland, at p. 475.)

Here, Juror No. 32 stated he could not "come to a judgment" in the case because he simply did not want to judge another human being. This is a refusal to deliberate, albeit one of conscience, which constitutes inability to perform the function of a juror. (Cleveland, supra, 25 Cal.4th at p. 475.)

The trial court did not err in dismissing Juror No. 32 after deliberations had commenced.

**Substitution of Juror**

When a juror is dismissed after commencement of deliberations, it is appropriate to substitute another juror. (People v. Collins (1976) 17 Cal.3d 687, 691-692 (Collins).) As the California Supreme Court stated, substitution of an alternate juror "is desirable to maintain judicial efficiency." (Id. at p. 692.) The substitution of an alternate juror after deliberations have commenced is permissible when the "jury has been instructed to begin deliberations anew." (Id. at p. 691.)

Here, the trial court appointed an alternate juror and instructed the jury to begin deliberations anew. This procedure fully comports with the requirements set forth in Collins and the provisions of section 1089. The trial court did not err in appointing Alternate Juror No. 1 in place of Juror No. 32.

**Commencing Deliberations Anew**

The last issue [Petitioner] raises with respect to the jury is that instructing the jury to begin deliberations anew after it had reached a verdict on some counts violated his right to due process and a jury trial, as well as the constitutional protections against double jeopardy. These arguments were considered, and rejected, in People v. Sanborn (2005) 133 Cal.App.4th 1462, 1466-1468 (Sanborn).) We reject them here.

Both section 1089 and the holding of Collins require the trial court to instruct the jury to begin deliberations anew if a juror is substituted after commencement of deliberations. A trial court is not required to accept partial verdicts; it may properly advise the reconstituted jury to begin deliberations anew, even if the jury has reached verdicts on some of the charges prior to the juror substitution. (Sanborn, supra, 133 Cal.App.4th at p. 1468.)

8

> Also, both counsel agreed that beginning deliberations anew was the correct action. Thus, there was no error. (Sanborn, supra, 133 Cal.App.4th at pp. 1467-1468.)

(Answer, Ex. A at 5-7.)

3. Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state court adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long

as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

The United States Supreme Court recently held that "[w]hen, [as here], a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, __ U.S. __, 133 S.Ct. 1088, 1096 (2013); see also Bell v. Uribe, Nos. 11-56768, 11-56771, 2013 WL 4750069, *4-*6 (Sept. 5, 2013). In Johnson, the petitioner challenged the trial court's discharge of a juror in violation of the Sixth Amendment and California Penal Code § 1089. The Supreme Court held that despite an explicit ruling on the federal constitutional nature of the claim, the appellate court adjudicated the Sixth Amendment claim on the merits because it did not overlook such claim which was implicit in its holding. Id. at 1097-1099. Therefore, it is undisputed by the parties that based on the reasoning in Johnson, this Court must apply the AEDPA deferential standard to the last reasoned decision of the Fifth District Court of Appeal.

4.   Analysis of Claims

The Fourteenth Amendment guarantees a right to a trial by jury in all criminal cases that would come within the Sixth Amendment's guarantees if tried in a federal court. Duncan v. Louisiana, 391 U.S. 145, 149 (9th Cir. 1968). A defendant's Sixth Amendment right to a fair trial is violated when

the "essential feature" of the jury is not preserved. Williams v. Florida, 399 U.S. 78, 100 (1970). An impartial jury consists of jurors who will conscientiously apply the law and determine the facts. Lockhart v. McCree, 476 U.S. 162, 178 (1986). An impartial juror must lay aside his/her own opinion and render a verdict based only on the evidence presented in court. Irvin v. Dowd, 366 U.S. 717, 721-722 (1961). Jurors have a duty to deliberate and must consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a verdict. Lowenfeld v. Phelps, 484 U.S. at 235, 241; Allen v. United States, 164 U.S. 492, 501 (1896).

   California Penal Code section 1089 governs the discharge and substitution of jurors in California criminal trials. Cal. Penal Code § 1089. Section 1089, provides in pertinent part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, . . . the court may order the juror to be discharged." The trial court's authority to remove a juror does not end once the jury begins its deliberations; rather, the trial court can remove a juror "at any time." Cal. Penal Code § 1089. If a juror is removed, the trial court may substitute an alternate juror for the removed juror. Id. The Ninth Circuit has upheld the constitutionality of section 1089 by determining it "preserved the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." Miller v. Stagner, 757 F.2d 988, 995 & n.3 (9th Cir. 1985), amended on other grounds, 768 F.2d 1090 (9th Cir. 1985). On habeas corpus review, this Court must determine whether good cause supported the dismissal of the juror. However, the trial court's findings regarding juror fitness are entitled to special deference, as it is in a superior position to observe the juror's physical appearance and demeanor to determine if the juror can continue to deliberate. Perez v. Marshall, 119 F.3d 1422, 1427 (9th Cir. 1997).

   As an initial observation, although it may be argued that Juror No. 32 was the lone "holdout juror" as to Counts 4 and 5, the record demonstrates that the trial court was clear that it did not consider Juror No 32's possible verdict in its inquiry or decision and did not wish to know what Juror No 32's possible verdict was. Thus, the trial court's inquired neutrally concerning the division of the jury, and the trial court's examination focused on the willingness of Juror No. 32's ability to deliberate. At the beginning of the inquiry, the trial judge specifically informed Juror No 32, as he had

1  previously done, that the jurors did not sit in moral judgment of a defendant, but rather each juror's
2  task was to make a decision about the facts.

3  After an appropriate inquiry by the trial court, this Court is satisfied that Juror No. 32 was
4  dismissed for "good cause."  See, e.g., Bell v. Uribe, 2013 WL 4750069, *8 (9th Cir. 2013) ("[u]nder
5  Supreme Court precedent, the remedy for allegations of juror misconduct is a prompt hearing in which
6  the trial court determines the circumstances of what transpired, the impact on the jurors, and whether
7  or not the misconduct was prejudicial.") (citing Smith v. Phillips, 455 U.S. 209, 216-217 (1982); Dyer
8  v. Calderon, 151 F.3d 970, 974-975 (9th Cir. 1988).)  Although Juror No. 32 had initially indicated a
9  willingness to deliberate at the beginning of trial, he later indicated that he "changed his mind" about
10 being able to deliberate and render a judgment in the case against Petitioner.  The inability to render a
11 judgment in the case is inconsistent with the essential tasks of a juror, who must consider the evidence
12 presented to them and made a decision.  Juror No. 32's expression of an inability to render judgment
13 constituted substantial evidence that he could no longer perform his function as an impartial juror.
14 The record supports the finding that Juror No. 32 was dismissed not because of his status as a potential
15 holdout juror, but because of his inability to continue performing the essential function of a
16 deliberating juror.  This credibility finding is presumed correct (28 U.S.C. § 2254(e)(1)), and given
17 that the circumstances showed a demonstrable reality that Juror No. 32 was unable to perform his
18 duties, the California Court of Appeal's rejection of Petitioner's challenge to the removal of Juror No.
19 32 was neither contrary to, nor an unreasonable application of, clearly established federal law, and
20 habeas corpus relief is foreclosed.

21 Because there was "good cause" to discharge Juror No. 32, there was no violation by the trial
22 court in substituting an alternate juror to replace No. 32, and instructing the entire jury to start
23 deliberations anew.  See, e.g., Bell v. Uribe, 2013 WL 4750069 *9 (recognizing that California Penal
24 Code § 1089 "preserve[s] the 'essential feature' of the jury required by the Sixth and Fourteenth
25 Amendments.") (citing Miller v. Stagner, 757 F.2d at 995).

26 Petitioner further contends that "[c]learly established Federal law as determined by the
27 Supreme Court has long held that 'it is improper for a trial judge to inquire as to the numerical
28 division of a deadlocked jury.'  Sanders v. Lamarque, 357 F.3d 943, 944 (9th Cir. 2004) (citing

1  Brasfield v. United States, 272 U.S. 448, 449-450 (1926); *Burton v. United States*, 196 U.S. 283, 307-
2  308 (1995)."  (Brief, at 11.)  Respondent correctly points out that this sub-claim is unexhausted as
3  Petitioner failed to raise it to the state courts, and the grant of habeas corpus relief is foreclosed.  See
4  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a
5  state prisoner, the prisoner must exhaust his remedies in state court.").

6       In any event, even if the claim were exhausted, it is clear the claim is without merit.  See 28
7  U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court may deny
8  an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise
9  even a colorable federal claim.)  As recently reiterated by the Ninth Circuit in Bell v. Uribe, the
10 Supreme Court's decisions in Brasfield and Burton do not support his argument.  2013 WL 4750069
11 *8.  The Supreme Court has clarified that its decision in Brasfield which prevents polling the jury is
12 limited to its supervisory authority over the federal judiciary, and is not based on any particular
13 constitutional provision.  See Lowenfield v. Phelps, 484 U.S. 231, 240 (1988); see also Harrison v.
14 Gillespie, 640 F.3d 888, 902 n.12 (9th Cir. 2011) (the Ninth Circuit has noted that the Supreme Court
15 bars federal courts, but not state courts, from "inquiring about the numerical breakdown of a divided
16 jury.").  In addition, "the admonition against jury balloting in Burton was dicta and, given its
17 relationship to Brasfield, was 'only supervisory in nature.'"  Bell v. Uribe, 2013 WL 4750069 *8
18 (citing Locks v. Sumner, 703 F.2d 403, 406 (9th Cir. 1983).)  As a consequence, relief under § 2254 is
19 foreclosed.  See Early v. Packer, 537 U.S. 3, 10 (2002) (holding federal jury coercion cases premised
20 solely on supervisory powers rather than constitutional grounds are not a basis for relief under §
21 2254).

22       In sum, given the special deference this Court must afford to the trial court's assessment of
23 credibility, a "fairminded" jurist could agree with the state court's conclusion that the trial court's
24 dismissal of Juror No. 32 and instruction to the jury to "begin [its] deliberations anew" with the
25 alternate juror participating in those deliberations did not deprive Petitioner of his constitutional right
26 to an impartial jury.  See Richter, 131 S.Ct. at 786.
27 ///
28 ///

5. Discovery, Expansion of the Record, and/or Evidentiary Hearing

AEDPA "substantially restricts the district court's discretion to grant an evidentiary hearing" and sets forth the manner in which federal courts must review the factual record. Pinholster, 131 S.Ct. at 1400-1401. "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Id. at 1400.

Here, there is no basis for further development of the record. The state appellate court adjudicated Petitioner's claims on the merits, and this Court is limited to the record that was before the state court. Pinholster, 131 S.Ct. at 1398. Petitioner's reliance on Taylor v. Maddox, 366 F.3d 992 (9th Cir. 2004), is misplaced. In Maddox, the Ninth Circuit held that a challenge under 28 U.S.C. § 2254(d)(2) may be raised "where the state court should have made a finding of fact but neglected to do so. In that situation, the state-court factual determination is perforce unreasonable and there is nothing to which the presumption of correctness can attach." Id. at 1000-1001.

In this instance, the trial court took evidence by way of questioning Juror No. 32 to determine his fitness as a juror, and Petitioner fails to contradict the facts found by the trial and appellate courts. Because the state court's adjudication of the claims was not contrary to, or an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts, there is no basis for further expansion of the record, by way of discovery and/or evidentiary hearing. See Pinholster, 131 S.Ct. at 1399 ("In practical effect, . . . when the state-court record 'precludes habeas relief' under the limitations of 2254(d), a district court is 'not required to hold an evidentiary hearing.'").

6. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 cases requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. The requirement that a petitioner seek a certificate of appealability is a gate-keeping mechanism that protects the Court of Appeals from having to devote resources to frivolous issues, while at the same time affording petitioners an opportunity to persuade the Court that, through full briefing and argument, the potential merit of claims may appear. Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000). However, a state prisoner seeking a writ of habeas corpus has no absolute entitlement to

14

appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute, 28 U.S.C. § 2253, provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

This Court will issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find it debatable that Petitioner has failed to show an entitlement to federal habeas corpus relief. Accordingly, the Court declines to issue a certificate of appealability.

///

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;
2. The Clerk of Court is directed to enter judgment in favor of Respondent; and
3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: **September 9, 2013**          /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE